# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

September 16, 2020

By ECF
The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *United States v. Eldarir*, No. 20-CR-243 (LDH)

Your Honor:

Defendant Ashraf Eldarir writes to reply to the government's opposition to his motion to inspect grand jury records, and to supplement his initial motion in light of Judge Matsumoto's decision in *United States v. Corbett et al.*, No. 20-cr-213 (KAM) (E.D.N.Y. Aug. 21, 2020), ECF No. 85.[1]

In it opposition, the government asks the Court to grant Mr. Eldarir access only to demographic data in the master jury wheel and to deny the remainder of the requested records and information. But the Jury Selection and Service Act ("JSSA") entitles the defendant to more than just that demographic data. To the contrary, Congress has legislated that he "shall be allowed to inspect, reproduce, and copy such records or papers" "used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f). This "unqualified right," *United States v. Test*, 420 U.S. 28, 30 (1975), extends to all records that are necessary to discover and, if appropriate, prepare a motion to dismiss the indictment on "the ground of substantial failure to comply with the provisions of this title in selecting the grand . . . jury." 28 U.S.C. § 1867(a), (f).

To determine whether the selection of the grand jury in this case substantially complied with the JSSA, Mr. Eldarir requires more than just the demographic information of who was included in the master jury wheel. He also needs information in the possession of the clerk's office regarding how the qualified grand jury wheel was constructed and how, from there, the grand jury in this case was selected. *See generally* Eastern District of New York Jury Selection Plan, *at* https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf; *United States v. Miller*, 116 F.3d 641, 657 (2d Cir. 1996) (describing Eastern District jury selection plan, beginning with creation of master jury wheel, then wheel of subset of qualified jurors, and finally randomly selected jurors from that qualified list). Because, as Judge Matsumoto held in *Corbett*, "[g]rand

---

[1] Judge Matsumoto's order is attached as Exhibit A. The government has moved for reconsideration of the order. *See United States v. Corbett*, No. 20-cr-213 (KAM) (E.D.N.Y. Sept. 2, 2020), ECF No. 91. That motion remains pending.

juries are selected from the master wheel only after the creation of a separate Qualified Jury Wheel, and even then only after further procedure administered by the Clerk of Court . . . the Master Jury Wheel, standing alone, cannot be used to determine whether grand juries in this district are selected in compliance with the JSSA." Ex. A at 7-8

The Court should adopt Judge Matsumoto's reasoning and grant Mr. Eldarir access to the same records ordered there, which are necessary to determine whether the grand jury selection process complied with the terms of the JSSA. Indeed, Judge Matsumoto's order follows from the JSSA's express command that defendants be allowed to inspect grand jury records in the Court's possession; is consistent with similar disclosure orders issued by district judges in the Southern District of New York and around the country; and scrupulously abides by the limits that Congress and the Second Circuit have imposed for production of grand jury materials.

As Judge Matsumoto observed, the JSSA's unqualified right to discovery entitles a defendant to materials that are in the Court's possession concerning the jury selection process. Ex. A at 5 (citing *Miller*, 116 F.3d at 658). These records are not limited to demographic information concerning the master jury wheel, but apply to all papers in the court's possession that relate to the selection of the grand jury that indicted Mr. Eldarir. *Id.* at 9; *see* 28 U.S.C. § 1867(f).

For example, the Circuit has affirmed district courts' disclosure of jury records that go beyond mere demographic information regarding the master jury wheel, such as the contents of completed juror questionnaires, which Judge Dearie previously ordered, *see Miller*, 116 F.3d at 658, and data regarding juror questionnaires returned as undeliverable. *See United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996). And in the Southern District, district judges have granted grand jury records substantially the same as what Mr. Eldarir requests here. *See United States v. Saipov*, No. 17-cr-722 (VSB), 2020 WL 915808, at *3 (S.D.N.Y. Feb. 26, 2020); *United States v. Simmons*, 20-cr-294 (PKC) (S.D.N.Y. June 24, 2020), ECF No. 11 (endorsing order in *Saipov* and disclosing same discovery). Indeed, the government in the Southern District consented to the disclosure of most of the requests Mr. Eldarir has made here, including materials concerning the selection of qualified jurors from the master jury wheel, and the selection of grand jurors from that qualified list. *See United States v. Balde*, No. 20-cr-281 (KPF) (S.D.N.Y. July 14, 2020), ECF No. 29, at 2.[2] To date, the government has offered no explanation why it has taken the opposite tack here. And, as Judge Matsumoto suggested in criticizing its unexplained recalcitrance on this issue, no good reason is apparent: The Eastern District office has opposed the majority of defendants' requests "[w]ithout identifying information that materially distinguishes the jury selection in the Eastern District of New York from that of the Southern District of New York" and its "response to this and similar motions in the Eastern District *inexplicably* differs from the response of the government in the Southern District on the same issue." *Corbett*, Ex. A at 2, and 7 n. 2 (emphasis added).

Nor are these Circuit and Southern District cases outliers. Nationwide, district judges have granted defendants access to records far beyond the meager master wheel data the government contends we should be limited to receiving. *See, e.g.*, *United States v. Tsarnaev*, No. 13-cr-10200 (GAO) (D. Mass. June 26, 2014) (granting inspection of grand jury materials

---

[2] The government's consent to the *Balde* grand jury records is attached as Exhibit B.

corresponding to items 6, 7, 9-13, 15-18, 20, and 22 of the Martin Affidavit), ECF No. 393; *United States v. Ramos Cruz*, No. 3:15-cr-00075 (JAF) (D.P.R. Aug. 3, 2015) (granting inspection of grand jury materials corresponding to items 1, 6, 7, 10-12, 15-18, 20-22 of the Martin Affidavit), ECF No. 693; *United States v. Brooks*, No. 13-cr-0206-AT (N.D. Ga. Feb. 10, 2015) (granting inspection of grand jury materials corresponding to items 1, 4-22 of the Martin Affidavit as well as "all manuals, memorandums, standard operating procedures, and other materials . . . which set forth procedures, guidelines, and instructions for implementing and monitoring" the Jury Plan), ECF No. 103; *United States v. Oldham*, No. 12-cr-20287 (E.D. Mich. Feb. 7, 2014) (granting inspection of grand jury materials corresponding to items 1, 4-7, 9, 15, 16 of Martin Affidavit), ECF No. 358; *United States v. Casey*, No. 05-cr-277 (ADC) (D.P.R. June 25, 2012) (granting inspection of grand jury materials roughly corresponding to items 1, 8-15, 17, 18, 20- 22 of the Martin Affidavit), ECF No. 655; see Exhibit D (list of specific records ordered disclosed).[3]

Beyond the materials in the clerk's office's possession, Judge Matsumoto recognized that the JSSA also permits defendants to take testimony from the district jury administrator where such information is necessary to explain the contents and limits of the clerk's jury records. Ex. A at 6 (citing *Miller*, 116 F.3d at 658); *see also* 28 U.S.C. § 1867(d) (providing that defendant filing motion to dismiss for district's failure to comply substantially with JSSA "shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available"). Thus, this Court may schedule a hearing for the district's jury administrator to testify regarding its jury selection recordkeeping and data collection. *See Balde*, No. 20-cr-281 (KPF) (S.D.N.Y. June 30, 2020), Minute Entry. Alternatively, as Judge Matsumoto did, this Court may order the jury administrator to provide a written description of the records it possesses that relate to individual requests for information, in the event that the requested information is not available in the format that defendants request. *See, e.g.*, Ex. A at 12 (granting request number 7 from Martin affidavit and providing that, "[i]f this information is not retained, the Clerk of Court shall provide a description of underlying procedures used pertaining to this data set, and what information, if any, is retained"). All that the Court may not do is order the jury administrator to collect new data or conduct new data analysis for the defendant. *Id.* at 5 (citing *Miller*, 116 F.3d at 658). But, of course, we have never made such a request, and only seek those materials in the Court's current possession.

Finally, Judge Matsumoto observed that any disclosed grand jury records must be anonymized and stripped of any identifying information. Ex. A at 9.  Mr. Eldarir consents to that, and, like the defendants in *Corbett*, did not request any such data to begin with. Accordingly, there is no dispute that identifying information should not be produced. The cases the government relies upon for restricting access to grand jury records to protect jurors' privacy are inapposite. *See* ECF No. 11 at 8-9; Ex. A at 8 n.3 (finding government's opposition to disclosure unpersuasive because cases it cites "stand largely for the parties' agreed-upon proposition that personally identifiable information from the Master Jury Wheel, such as names and addresses, may not properly be disclosed"). And, if necessary, Mr. Eldarir consents to entry of a protective

---

[3] A compilation of the grand jury records disclosed in these cases from across the nation is attached as Exhibit C.

3

order, as Judge Matsumoto issued, governing the redistribution of disclosed grand jury records in response to our motion. *See* Ex. A at 18-20.

Judge Matsumoto correctly understood that the the JSSA grants defendants an unqualified to inspect grand jury records, and that this right extends to all records relating to the district's compliance with the JSSA regarding the selection of this Central Islip grand jury. These records relate to more than the creation and composition of the master jury wheel, but also concern the creation and composition of the qualified jury wheel and, from that qualified list, the eventual selection of the grand jurors who indicted Mr. Eldarir. As Judge Matsumoto noted, the government's narrow conception of a the JSSA's requirements cannot be squared with the statute's text or the practice within and outside this Circuit. Her disclosure of the requested records was appropriate under the law. This Court should adopt and follow her order in this case.

Respectfully submitted,
_____/s/_____
Kannan Sundaram
Assistant Federal Defender
(917) 691-4900

cc:  Marietou Diouf
     Assistant U.S. Attorney

4