WPC
F.#2023R00527

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                     Docket No. 20-CR-243 (S-1) (LDH)

ASHAF OMAR ELDARIR,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTIONS *IN LIMINE*</u>

                                                        BREON PEACE
                                                        United States Attorney
                                                        Eastern District of New York

William P. Campos
Assistant U.S. Attorney
(Of Counsel)

1

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motions in limine in advance of trial, which is now scheduled to begin on January 27, 2025. The defendant, Ashraf Omar Eldarir, is charged in a four-count Superseding Indictment with smuggling ancient Egyptian artifacts into the United States on four separate dates during a nine-month period from April 2019 to January 2020, in violation of Title 18, United States Code, section 545. The government respectfully requests that the Court[1]:

1) Admit pursuant to Federal Rules of Evidence 404(b), evidence of additional artifacts the defendant smuggled into the United States on additional dates;

2) Admit the forensic extraction of the defendant's cellular telephone based on an authentication certification without a testifying witness pursuant to Federal Rules of Evidence 902(13) and 902(14); and

3) preclude the defendant from presenting evidence and argument concerning possible punishment and collateral consequences.

For the reasons set forth herein, the Court should grant the government's motions in limine.

RELEVANT BACKGROUND

At trial, the evidence will show that between April 2019 and January 2020, the defendant Ashraf Omar Eldarir traveled frequently between Egypt and the United States and smuggled Egyptian artifacts out of Egypt and sold them in the United States. For his

---

[1] This memorandum cannot anticipate every type of evidence and testimony that will be offered at trial and does not detail all the specific testimony the government will elicit at trial. The government respectfully reserves its right to supplement this filing with additional papers setting forth legal authority for the introduction of evidence and/or additional motions in limine as legal issues are identified closer to trial, the government interviews potential witnesses, or in response to any objection by defense to the introduction of evidence. The government will meet and confer with defense counsel to attempt to resolve any issues as they arise prior to engaging in motion practice.

conduct, the defendant was charged in a Superseding Indictment with four counts of smuggling.

On or about January 22, 2020, the defendant arrived at JFK Airport in New York from Egypt carrying 590 ancient Egyptian artifacts in his luggage. He did not declare anything on his customs documents. Specifically, he claimed he had no commercial merchandise. He also claimed he had nothing acquired abroad being brought into the United States in excess of $800, which was the duty-free exemption. He was initially charged by complaint and his cell phone was seized and later searched. The court previously denied the defendant's motion to suppress the cell phone and its contents.

Further investigation showed that the January 2020 smuggling episode was not an isolated, one-time event. On at least three other occasions, the defendant smuggled Egyptian artifacts to sell in the United States. On April 18, July 11, November 5, 2019, the defendant entered JFK Airport from Egypt and claimed he had nothing to declare. Each time he returned to the United States, he consigned for sale Egyptian artifacts with an art dealer. Specifically, the defendant consigned one ancient Egyptian polychrome relief, one ancient Egypto-Roman limestone stele, and one ancient Egyptian limestone head of a man, respectively. Each was sold to a buyer in the United States for $800 or more.

The photos of each of those three artifacts were found in the defendant's cell phone. Each digital photo contained metadata showing when the photo was taken and the location of the phone when the photo was taken. For each of the three additional smuggled artifacts the location of the device taking the photos was in Egypt. And, the date each image was captured in Egypt was within one month <u>before</u> the defendant re-entered the United States, thereby showing the defendant had brought them into the United States without

declaring them on the customs documents. The government recovered the respective smuggled Egyptian artifacts from the purchasers.

By this motion, the government moves to include additional episodes of smuggling by the defendant.

I.   Evidence of the Defendant's Smuggling of Additional Ancient Egyptian Artifacts Are Admissible Pursuant to Federal Rule of Evidence 404(b)

Evidence of the defendant's other acts of smuggling additional ancient Egyptian artifacts is also admissible under Federal Rule of Evidence 404(b) to show the defendant's intent, motive, knowledge, identity, and absence of mistake, as well as a common scheme or plan. Specifically, the evidence the government intends to introduce is admissible because it is evidence: (i) of the defendant's common scheme and plan of learning about objects while in Egypt, obtaining photos of them, and causing them to be brought into the United States for sale without declaring to customs authorities that he has brought the objects into the country; (ii) of the defendant's intent and motive to smuggle Egyptian artifacts into the United States from Egypt for sale in the United States; and (iii) that establishes the identity of the defendant as the person who smuggles or causes the artifacts to be smuggled and who benefits from the sale of the artifacts. The defendant's knowledge, motive, intent, and absence of mistake, as well as his participation in the charged conduct, are issues the government expects the defendant to dispute at trial.

A.   Applicable Law

Pursuant to Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, and acts, while not admissible to prove propensity to commit crime, is admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

4

mistake or accident." Fed. R. Evid. 404(b).  "The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" United States v. Brand, 467 F.3d 179, 196 (2d Cir. 2006) (quoting United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (internal quotation marks omitted)).

Thus, the Second Circuit has approved of admitted evidence of other crimes to prove, for example, (1) a defendant's intent to commit a proscribed act, see Brand, 467 F.3d at 197 (evidence that the defendant possessed child pornography admissible as proof that he intended to engage in illicit sexual conduct with a minor); (2) a defendant's knowledge of a relevant fact, see United States v. Paulino, 445 F.3d 211, 222-23 (2d Cir. 2006) (prior cocaine convictions admissible as proof that the defendant was aware that substance in his closet was cocaine); (3) a defendant's motivation for a charged crime, see United States v. Laflam, 369 F.3d 153, 156-57 (2d Cir. 2004) (evidence that the defendant was a drug user admissible as proof of motive to commit the charged bank robbery); (4) a defendant's capacity to commit the charged crime, see United States v. Zedner, 401 F.3d 36, 49-50 (2d Cir. 2005) (evidence of prior fraud admissible as proof of the defendant's "financial sophistication [and] his ability to execute complex schemes"), rev'd on other grounds 126 S. Ct. 1976 (2006); or (5) a defendant's participation in a crime based on his prior participation in criminal activity involving a similar modus operandi, see United States v. Sliker, 751 F.2d 477, 486-87 (2d Cir. 1984) (evidence of defendant's involvement in uncharged bank fraud with similar modus operandi admissible to prove defendant's participation in charged bank fraud); United States v. Reed, 639 F.2d 896, 906-7 (2d Cir. 1981) (same).

5

In general, "the government is required to establish only a similarly or some connection to establish that a prior act is relevant to one of the elements . . . of the crime charged." Brand, 467 F.3d at 197; Paulino, 445 F.3d at 223. Moreover, evidence admissible pursuant to Rule 404(b) should not be excluded on grounds of unfair prejudice where the evidence does not "involve conduct more inflammatory than the charged crime[s]." Paulino, 445 F.3d at 223.

Finally, where the indictment charges a conspiracy to violate the law, proof of "other crimes [and] wrongs" is admissible "as direct evidence of the conspiracy itself" without regard to the requirements of Rule 404(b). United States v. Baez, 349 F.3d 90, 93-94 (2d Cir. 2003). Similarly, even if the other-crimes evidence is not offered in support of a conspiracy charge, it may be admitted if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime at trial. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000.)

B.  Discussion

The Superseding Indictment charges the defendant with four counts of smuggling Egyptian artifacts into the United States and selling the one he got through customs, through an art dealer, to individuals in the United States. The government continued its investigation and learned that the defendant smuggled at least four additional Egyptian artifacts into the United States and had them sold to individuals in the United States.

The government has learned that the four additional Egyptian artifacts were in Egypt a few months before the defendant consigned them for sale with a United States-based art dealer. The defendant's cellphone contained images of several ancient Egyptian artifacts.

6

The photos of the four artifacts at issue had metadata in the defendant's cellphone placing the artifacts in Egypt. For the photos of three of those artifacts (namely, a large female sarcophagus lid, a mask with a beard, and a large mask) the metadata showed that the photos were taken on October 8, 2018. The defendant returned to the United States through JFK Airport two months later and did not make any customs declarations. The defendant consigned the three artifacts to an art dealer and they were sold to individuals in the United States. The government recovered those artifacts from the buyers.

There was also a photograph in the defendant's cellphone of the fourth artifact (a terracotta Isis Aphrodite). The metadata shows that the photo was taken in Egypt on September 6, 2019. Approximately two months later, the defendant returned to the United States through JFK Airport and, again, did not make any customs declarations. The defendant consigned the artifact to the same art dealer to be sold. The government is in the process of recovering the artifact, which is present in the United States.

Here, the proffered evidence, which has been provided to the defense, establishes that the defendant had a common method and modus operandi in identifying objects, photographing them in Egypt, frequently traveling to Egypt and returning to the United States, and transacting with the same art dealers to consign the artifacts for sale to individuals in the United States. Additionally, the proffered evidence establishes an absence of mistake about the customs requirements—it was not an isolated one-time event.

The proffered evidence is clearly relevant pursuant to Rules 401 and 402, offered for a purpose other than propensity, and admissible under the Rule 403 balancing test as the evidence "'[does] not involve conduct any more sensational or disturbing than the crimes with which [the defendant has been] charged.'" Pitre, 960

7

F.2d at 1120 (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). Where the uncharged crimes are similar in nature to the charged crimes, Rule 404(b) evidence is generally admissible under the Rule 403 balancing test. United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee, on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction").

Specifically, the proffered evidence is limited to a small number of artifacts, which the defendant never disclosed on customs documents, whose photos were in the defendant's cellphone and whose metadata showed that they had been in Egypt shortly before being consigned for sale in the United States. This is not "any more sensational or disturbing" than the conduct underlying the crimes charged, which entails the defendant's smuggling of Egyptian artifacts. As such, there is no risk of unfair prejudice. See, Pitre, 960 F.2d at 1120 (finding no error in the admission of 404(b) evidence where the prior conduct "did not involve conduct any more sensational or disturbing than the crimes with which the appellants were charged" (internal quotation marks and alterations omitted)); see also Sebolt, 460 F.3d at 917. Any potential prejudice is de minimis and can be eliminated through a limiting instruction. See Mickens, 926 F.2d at 1328-29; Levy I, 731 F.2d at 1002; United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).

8

II.  The Court Should Allow the Government to Authenticate The Defendant's Cellphone Extraction by Certification

The defendant's cellphone was lawfully seized and reviewed in connection with the charges in this case. Indeed, this Court denied the defendant's motion to suppress the evidence seized from his iPhone. See Docket Entry 76. In the interest of streamlining trial and avoiding unnecessary custodial witnesses, the government seeks to authenticate evidence from the defendant's seized cellphone through a record certification pursuant to Federal Rules of Evidence 902 (13) and (14).

A.  Applicable Law

Federal Rules of Evidence 902(13) and (14), provide a mechanism for parties to authenticate evidence generated by electronic processes or systems. Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification."

"The bar for authentication of evidence under [Federal Rule of Evidence] 901(a) is 'not particularly high.'" United States v. Bout, 651 Fed. App'x 62, 63 (2d Cir. 2016) (quoting United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007)). "It is met where 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" Id. at 63-64 (quoting United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004)). Moreover, the Supreme Court has held that admitting evidence that has been authenticated by affidavit or certificate does not violate a defendant's right to confrontation because certifications are not testimonial. See Melendez-Diaz v.

9

Massachusetts, 557 U.S. 305 (2009); see also United States v. Qualls, 613 F. App'x 25, 28 (2d Cir. 2015).  As this Court recently found, the facts concerning the electronic systems that generate electronic records and the processes of making electronic copies, like the processes of maintaining business records, are not testimonial because they only establish authenticity—that the records were generated by a reliable process and are what they purport to be—and can therefore be established by certification without implicating the Confrontation Clause.  United States v. Otufale, No. 24-CR-170 (KAM), at *9-10 (E.D.N.Y. July 12, 2024); United States v. Hunt, 534 F. Supp. 3d 233, 256 (E.D.N.Y. 2021) (holding it permissible to use certifications to authenticate records from social media accounts over the objection of the defendant).

      B.    Discussion

In this case, law enforcement lawfully seized the defendant's cellphone and the government intends to introduce relevant communications, images, metadata, and other content from the extraction of his cellphone.[2]  The content from his cell phone should be admissible through certification because forensic images of cellphones are generated by a standard process that produces an accurate result.  United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (affirming district court's decision to admit text message evidence extracted from defendant's phone as self-authenticating under FRE 902(14)); United States v. Anderson, 563 F. Supp. 3d 691, 695-96 (E.D. Mich. 2021)

---

[2] Self-authentication of electronic evidence by certification establishes that electronic evidence is authentic, not that it is relevant or non-hearsay.  In this case, the communications the government will introduce are not hearsay because they are opposing party admissions pursuant to Federal Rule of Evidence 801(d)(2) and they are relevant because the substance relates to the charges.

(finding text messages self-authenticating under FRE 902(14)). Excerpts from such records that are generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification. Accordingly, electronic evidence can be authenticated by certification of a competent technician who performed the extraction and generated the copies rather than by the live testimony. Id. (finding digital records sufficiently authenticated by certification).

For these reasons, the government should be permitted to authenticate and offer as evidence content from the defendant's cellphone by certification. This would streamline the presentation of evidence at trial, eliminate unnecessary persons from the courtroom, and shorten the amount of time that jurors will need to sit for trial, thereby promoting judicial efficiency.

III. **The Court Should Preclude Evidence and Argument Concerning Possible Punishment and Collateral Consequences**

The Court should preclude the defendant from referencing at trial any consequences of his conviction because such evidence is irrelevant, unfairly prejudicial, and outside the province of the jury.

A. **Applicable Law**

Evidence regarding possible consequences the defendant may face if convicted should be precluded because it is not relevant. Pursuant to Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence

11

in determining the action." Generally, relevant evidence is admissible and "[i]rrelevant evidence is not admissible." See Fed. R. Evid. 402. "[T]he district court has broad discretion to exclude evidence that is irrelevant . . . ." United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980); see also Fed. R. Evid. 403. The defendant's punishment is not a fact "of consequence" to be determined at trial. Therefore, any evidence of those issues is not relevant. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt. See generally Sand, et al., Modern Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts." (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

Courts have repeatedly precluded evidence of the potential sentences defendants face on the grounds that such evidence is irrelevant, unfairly prejudicial, and outside the province of the jury. See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that

12

district court correctly refused to permit defendant to argue about the severity of his possible punishment); United States v. DiMarzo, 80 F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of a potentially harsh sentence because such evidence "would have necessitated an unwarranted departure from the fundamental division of responsibilities between judge and jury"). In short, guilt should determine punishment, not the other way around. See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent.").

### B. Discussion

The Court should preclude the defendant from referencing at trial any potential consequences of his conviction. If convicted of offenses charged in the Superseding Indictment, the defendant's sentence would be based upon a careful analysis of the applicable guidelines. The government, therefore, moves to preclude at trial any discussion of the defendant's possible punishments or collateral consequences of conviction. Such information could only serve to confuse the jury, invite the jury to consider irrelevant information, and potentially ignore the Court's instructions due to sympathy for the defendant. Courts have consistently recognized that juries have no right to nullify, and "trial courts have the duty to forestall or prevent such conduct." Id. at 616.

Therefore, the Court should preclude the defendant from referencing potential punishment and collateral consequences at trial.

CONCLUSION

For the foregoing reasons, the Court should grant the government's motions in limine in their entirety.

Dated:     Brooklyn, New York
           October 8, 2024

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York
                                        271-A Cadman Plaza East
                                        Brooklyn, New York 11201

                              By:       /s/William P. Campos
                                        William P. Campos
                                        Assistant United States Attorney
                                        (718) 254-6104

cc:     Kannan Sundaram, Esq.
        Counsel for the defendant